UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| WILLIAM C. LEDONNE | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 1151 |
| | ) | |
| AXA EQUITABLE LIFE | ) | |
| INSURANCE CO. (f/k/a The Equitable | ) | |
| Life Assurance Society of the United | ) | |
| States), a New York Corporation, | ) | |
| AXA ADVISORS, LLC, a foreign limited | ) | |
| liability corporation, and | ) | |
| WILLIAM A. CANADY, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff William C. LeDonne alleges that defendant William A. Canady intentionally misrepresented his employer's intent to pay disability benefits to induce LeDonne to purchase an insurance policy. Canady filed a motion to dismiss Counts III through IV of LeDonne's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, we grant Canady's motion as to Counts III and IV, but deny it as to Count V.

## BACKGROUND

When considering a motion to dismiss under Rules 12(b)(1) and (b)(6), we accept all well-pleaded allegations as true. *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 981 (7th Cir. 2004); *Thompson v. Illinois Dep't of Prof'l Regul.*, 300 F.3d 750, 753 (7th Cir. 2002). The facts as alleged by LeDonne are as follows.

On or about September 5, 1996, LeDonne purchased a Business Executive Disability Income Policy issued by AXA Equitable Life Insurance Company ("AXA") and sold to him by

Defendant Canady. (Am. Compl. ¶¶ 7, 11.) At that time, LeDonne owned a hardware store. (*Id.* at ¶ 12.) In June 1996, Canady, an agent of AXA, met with LeDonne at his hardware store twice to discuss his interest in a disability insurance policy. (*Id.* at ¶¶ 9, 13.) On those occasions, Canady assured LeDonne that AXA would pay him "benefits if a disability prevented him from operating his store." (*Id.* at ¶ 13.) Relying on Canady's representations, LeDonne purchased the policy and made timely premium payments. (*Id.* at ¶¶ 10, 14, 16.) Canady's representations to LeDonne proved to be false, as AXA subsequently denied him benefits sought in a disability claim filed November 15, 2002. (*Id.* at ¶¶ 18-19, 21, 25.) Moreover, Canady knew that these promises to LeDonne were false when he made them. (*Id.* at 25.)

Based on these facts, LeDonne's Amended Complaint asserts three claims against Canady, in addition to the claims against AXA. In Count III, LeDonne alleges that Canady committed common law fraud by inducing him to purchase the policy with false promises. The Amended Complaint also includes claims for negligent misrepresentation (Count IV) and, as Count V, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). LeDonne seeks to recover the total disability benefits under the policy, plus additional compensation, attorney's fees, and punitive damages.

Presently before us is Canady's motion to dismiss the claims against him. He contends that LeDonne fails to state a claim for promissory fraud because he does not allege any scheme or larger pattern of deception. (Mot. at 2-4.) Further, LeDonne's fraud claim should be dismissed because he insufficiently pled the necessary agency relationship as required by Federal Rule of Civil Procedure 9(b) and because his reliance on Canady's representations was unwarranted as a matter of law. (*Id.* at 5-9.) Canady also claims that Count IV should be

2

dismissed pursuant to the *Moorman* doctrine, as discussed in our June 29, 2005 opinion. (*Id.* at 9-10.) Finally, Count V fails because LeDonne has not alleged the misrepresentation of a fact or other deceptive practice by Canady. (*Id.* at 11-12.)

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, not decide the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, dismissal under Rule 12(b)(6) is warranted only if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957).

## ANALYSIS

### A.     Count III: Promissory Fraud

Under Illinois law, "a misrepresentation as to a future promise or intent will not sustain an action for fraud." *Sommer v. United Savings Life Ins. Co.*, 128 Ill. App. 3d 808, 813, 471 N.E.2d 606, 611 (2d Dist. 1984); *see AAR Int'l Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 798-799 (N.D. Ill. 2002). A narrow exception exists where the "promise is alleged to be part of a general scheme employed to accomplish the fraud." *Sommer*, 128 Ill. App. 3d at 813; *see HPI Health Care Servs, Inc. v. Mt. Vernon Hosp., Inc. et al.*, 131 Ill.2d 145, 168-169, 545 N.E.2d 672, 683 (Ill. 1989) (claim may be actionable "where false promise[s] or representation[s] of intention or other future conduct [were] the scheme or device to accomplish the [alleged] fraud" (*quoting Roda v.Berko*, 401 Ill. 335, 340, 81 N.E.2d 912 (Ill. 1989)). Nonetheless, "[p]romissory fraud is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). To prevent the exception from swallowing the rule, bald

3

assertions that the defendant never intended to keep a promise are "insufficient to state a claim for promissory fraud." *Brdecka v. Gleaner Life Ins. Soc.*, No. 02 C 3076, 2002 WL 1949743, at *3 (N.D. Ill. Aug. 23, 2002). Indeed, the burden of proof on a promissory fraud claim is "deliberately high," such that the plaintiff must plead "specific, objective manifestations of fraudulent intent – a scheme or device." *Bower*, 978 F.2d at 1012 (internal quotation and citation omitted).

While it is unclear exactly what level of conduct constitutes a scheme, some "elaborate artifice of fraud" or other "particularly egregious" deception is required. *Desnick v. ABC, Inc.,* 44 F.3d 1345, 1354-1355 (7th Cir. 1995). In *Asad v. Hartford Life Insurance Company*, for example, the defendant insurance company allegedly "embarked on a nationwide scheme to maintain or increase premium income by encouraging its agents to engage in fraudulent sales practices." 116 F. Supp. 2d 960, 964 (N.D. Ill. 2000). That court held that such an allegation of a massive, concerted device was sufficient to plead the promissory fraud exception. *Id.*

Courts also allow promissory fraud claims where the scheme alleged – even if not as broad as the scheme in *Asad* – is complicated or involves numerous related misrepresentations. *See AAR Int'l, Inc.*, 202 F. Supp. 2d at 793, 798-799; *Sommer*, 128 Ill. App. 3d at 812-813; *see also Wachovia Secs. LLC v. Neuhauser*, No. 04 C 3082, 2004 WL 2526390, at *9-10 (N.D. Ill. Nov. 5, 2004) (permitting claim where plaintiff alleged scheme by defendants who made false statements in SEC filings, promised to engage in only legal transactions while intending to violate securities laws and misused margin accounts); *Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333, at *1-5, 19 (N.D. Ill. Apr. 28, 2003) (holding promissory fraud adequately pled where defendant induced elderly plaintiff to take out two mortgages to remodel her home, forged her signature on documents, and did minimal work while pocketing $75,000). The Illinois appellate court in *Sommer* held that the

4

plaintiffs pled a scheme by alleging that, over the course of fourteen months, the defendant repeatedly deceived them about their existing and potential life insurance coverages and costs. 128 Ill. App. at 812-813. Specifically, plaintiffs claimed that defendant fraudulently represented that: (1) premiums on a new insurance policy were less than those on the existing policy; (2) the application for insurance should *not* state that plaintiffs sought a replacement policy (even though they did) "for technical reasons the plaintiff could not understand;" (3) the company was "taking action to change the policy" to provide dividends; and (4) the company modified the policy, under which plaintiffs could benefit by converting the existing policy. *Id.* The court found that the misrepresentations constituted "a complex scheme operated by defendant's agents to defraud" the plaintiffs, which could not have been discovered by simply reviewing the insurance contract. *Id.* at 814-815.

In a counterclaim, the defendants in *AAR International, Inc.* similarly alleged a series of misrepresentations designed to induce them to enter into a contract, an airplane lease. 202 F. Supp. 2d at 793, 798-799. Defendants claimed that, at the time the parties executed the lease, plaintiff promised to deliver the plane "fresh from an overhaul" and an engine inspection. *Id.* at 799. Only seven days later, however, plaintiff violated that promise (and the contract). *Id.* Moreover, plaintiff broke its promise to repair certain defects identified during the demonstration flight. *Id.* The court observed that "[a]lthough one broken promise is insufficient to show a pattern or scheme to defraud, 'a series of unfulfilled promises is better (though of course not conclusive) evidence of fraud than a single unfulfilled promise.'" *Id.* (*quoting Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999). Because the defendants alleged "a number of related broken promises," the court refused to dismiss the promissory fraud claim. *Id; see also Steadfast Ins. Co., Inc. v. Auto*

5

*Mktg. Network, Inc.*, 2 F. Supp. 2d 1058, 1060 (N. D. Ill. 1998) (finding scheme pled based on allegations that defendant misrepresented its intent to screen applications, minimize plaintiff's liability, maintain certain standards in the portfolio and make reasonable efforts before filing claims, among other fraudulent activities); *HPI Health Care Servs., Inc.*, 131 Ill. 2d at 165-169 (holding that plaintiff stated claim against defendants who made numerous false promises, even issuing press releases and articles, regarding their ability and intent to pay debts).

Unlike the plaintiffs in the above cases, however, LeDonne does not allege a scheme, device or egregious deception sufficient to fall within the promissory fraud exception. LeDonne claims that Canady twice told him that AXA would pay him benefits under the policy "if a disability prevented him from operating his store." (Am. Compl. at ¶ 13.) LeDonne alleges that Canady knew these representations were false when he made them. (*Id.* at ¶ 25.) While LeDonne is understandably suspicious of these promises in light of AXA's denial of benefits, his allegations fail to plead the necessary fraudulent intent. LeDonne alleges an oral promise, issued on two occasions. He does not claim that Canady and/or AXA engaged in other acts of trickery compounding the initial misrepresentations. He does not allege that they perpetrate this type of fraud as a regular practice, or on any grand scale, as was alleged in *Asad*. Without more, the alleged conduct simply does not rise to the level of a series of misrepresentations, such as those found in *Sommer* or *AAR International, Inc.*, or the "elaborate artifice of fraud" required to sustain a promissory fraud action under Illinois law. *Desnick,* 44 F.3d at 1354-1355; *see Wachovia Secs. LLC*, 2004 WL 2526390, at \*9-10; *Pulphus*, 2003 WL 1964333, at \*1-5; *see also Rosenblum v. Travelbyus.com, Ltd.*, No. 01 C 6441, 2002 WL 34187823, at \*3 (N.D. Ill. Nov. 6, 2002) ("A fraud claim cannot be supported by allegations that promises were broken and therefore were never intended to be kept.").

In his response to the instant motion, LeDonne contends that these misrepresentations were "part of a larger scheme" including "bad faith denial of [his] claim years later." (Resp. at 6.) Without doubt, "[f]raudulent intent may be inferred . . . where the breach of promise happens so close to the promise that the only possible inference is that the promisor never intended to keep the promise." *Zic v. Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 995 (N.D. Ill. 2001). In this case, Canady allegedly made the promises in June 1996 and AXA denied LeDonne's claim in November 2002, at the earliest. (Am. Compl. ¶¶ 13, 18.) Since more than *seven year*s elapsed between the promise and breach, we cannot infer fraudulent intent. *Zic*, 130 F. Supp. 2d at 995; *see Bors v. Duberstein*, No. 03 C 4636, 2004 WL 1588271, at *5 (N.D. Ill. July 15, 2004) (dismissing claim based on plaintiff's breach of promise made two years earlier); *Roxford v. Ameritech Corp.*, No. 00 C 282, 2000 WL 1538661, at *2 (N.D. Ill. Oct. 17, 2000) (same); *but see AAR Int'l, Inc.*, 202 F. Supp. 2d at 793, 798-799 (finding inference of fraud where promise was broken after only seven days).

Nor do we agree with LeDonne that the alleged fraud is "particularly egregious because the major impact of the fraud" struck him when "he was most financially vulnerable." (Resp. at 6.) As a practical matter, most people who request insurance benefits are medically and/or financially vulnerable. If adopted, LeDonne's position could transform many (if not most) disputes over denial of insurance benefits into fraud claims. Illinois' doctrine of promissory fraud is deliberately narrow, requiring objective manifestations of intent, to prevent such a result. "If the rule were otherwise, anyone with a breach of contract claim would open the door to tort damages by alleging that the promises broken were never intended to be kept." *Bower,* 978 F.2d at 1012.

Despite reviewing the Amended Complaint in the light most favorable to LeDonne, we

7

conclude that it fails to allege that the misrepresentations were part of a scheme or larger pattern of fraud. In our June 29, 2005 order, we provided LeDonne with an opportunity to plead fraud with greater specificity in accordance with Rule 9(b). As the Amended Complaint represents his second attempt at pleading fraud, we are persuaded that he cannot state a claim for promissory fraud. Although AXA Equitable Life Insurance Company and AXA Advisors, LLC have not moved to dismiss the Amended Complaint, common sense dictates that our ruling apply equally to them. Accordingly, we dismiss Count III with prejudice against all defendants.[1]

   B.  *Count IV: Negligent Misrepresentation*

Canady argues that Count IV should be dismissed pursuant to the *Moorman* doctrine. In response, LeDonne merely acknowledges that we already dismissed with prejudice the negligent misrepresentation claim asserted in the original complaint. (Am. Compl. at 7 n.1; Resp. at 9); *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 88 (Ill. 1982). Rather than address the merits of Canady's motion, LeDonne states that he "included Count IV . . . for purposes of preserving the record on appeal." (Resp. at 9.) Our earlier decision addressed the negligent misrepresentation claim against only AXA. *See LeDonne v. AXA Equitable Life Ins. Co. et al.*, No. 05 C 1151, slip. op. at 4-5 (N.D. Ill. June 29, 2005). As Canady was not a defendant in the original action, our prior decision technically has no effect on the claim asserted against him in the Amended Complaint. As additional briefing is not necessary for our analysis, we need not grant LeDonne leave to respond substantively to Canady's motion.

Turning to the merits, we grant Canady's motion to dismiss Count IV. As noted in our June 29, 2005 order, the Illinois Supreme Court's decision in *Moorman* established the economic loss

---

[1]Because we dismiss Count III for failure to sufficiently allege a scheme or device, we do not address Canady's other arguments in support of his motion.

doctrine in Illinois, which generally prohibits the recovery of economic losses under a tort theory. 91 Ill. 2d 69, 88 (1982). Under one exception to the economic loss doctrine, a plaintiff may pursue a negligent misrepresentation claim against a defendant who: (1) is "in the business of supplying information;" and (2) provides "this information for the guidance of others in their business relations with third parties." *Gerdes v. John Hancock Mut. Life Ins. Co.*, 712 F. Supp. 692, 696 (N.D. Ill. 1989); *see Soranno v. New York Life Ins. Co.,* No. 96 C 7882, 1999 WL 104403, at *12-13 (N.D. Ill. Feb. 24, 1999). When selling an insurance policy, an insurance agent is considered to be in the business of providing noninformational products, while an insurance broker is in the business of supplying information to clients. *Id.* at 699-700; *Sorrano*, 1999 WL 104403, at *12-13. Therefore, the *Moorman* doctrine bars a negligent misrepresentation claim against an insurance agent, but may allow such a claim against a broker. *Gerdes*, 712 F. Supp. at 699-700.

Here, the Amended Complaint alleges only that Canady was "an *agent* of AXA Advisors and AXA." (Am. Compl. ¶ 9) (emphasis added). LeDonne does not claim that Canady was an insurance broker or that he provided LeDonne with information about products available from insurance carriers other than AXA. Based on these allegations, LeDonne's claim against Canady for negligent misrepresentation must fail pursuant to the *Moorman* doctrine.

    *C.*     *Count V: Violation of the Illinois Consumer Fraud and Deceptive Practices Act*

The IFCA prohibits "unfair or deceptive acts or practices, including . . . misrepresentation or the concealment, suppression or omission of any material fact . . . in the conduct of any trade or commerce." 815 ILCS 505/2. As many courts have observed, we should liberally construe the IFCA, utilizing it "to the greatest extent possible to eliminate all forms of deceptive or unfair business practices." *Miller v. William Chevrolet, Inc.*, 326 Ill. App. 3d 642, 654-655, 762 N.E.2d

9

1, 11-12 (1st Dist. 2001) (internal citation and quotation omitted); *see Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1996); *Barr v. Safeco Ins. Co. of Am.*, 583 F. Supp. 248, 257 (N.D. Ill. 1984). Moreover, a plaintiff pursuing a claim under the IFCA "need not establish all of the elements of common law fraud." *Bixby's Food Sys., Inc. v McKay*, 193 F. Supp. 2d 1053, 1064 (N.D. Ill. 2002); *Miller*, 326 Ill. App. 3d at 654*; Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 856, 658 N.E.2d 1325, 1335 (1st Dist. 1995). While the crux of a promissory fraud claim is a scheme showing fraudulent intent, the "key consideration" for an IFCA claim is the defendant's conduct. *Falcon Assocs., Inc. v. Cox*, 298 Ill. App. 3d 652, 662-663, 699 N.E.2d 203, 210 (5th Dist. 1998) (commenting that "even an innocent or negligent misrepresentation may be actionable"); *see also Miller*, 326 Ill. App. 3d at 655.

To state a claim under the IFCA, LeDonne must allege: (1) a deceptive act or practice by Canady; (2) Canady's intent that LeDonne rely on that deception; (3) that the deception occurred in connection with a commercial transaction; and (4) that the deception proximately caused his damages. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 575-576 (7th Cir. 2001); *Tandy v. Marti,* 213 F. Supp. 2d 935, 937-938 (S.D. Ill. 2002); *Miller*, 326 Ill. App. 3d at 654-655. Canady does not dispute that LeDonne's Amended Complaint alleges the latter three of the four elements. (Mot. at 11-12; *see also* Am. Compl. ¶¶ 13-15, Count V, ¶ 25.) Canady contends that LeDonne failed to allege a misrepresentation of fact or other deceptive practice because his alleged comments about the disability coverage were simply personal opinions about the effect of a legal document, which cannot constitute a misrepresentation of fact. (Mot. at 11-12.)

Although Canady cites several cases in support of his argument, those authorities are

distinguishable.² (Mot. at 11-12 (*citing Randazzo v. Harris Bank Palatine*, 104 F. Supp. 2d 949 (N.D. Ill. 2000); *Harris Trust & Sav. Bank v. Great-West Life Assurance Co.*, No. 87 C 10674, 1989 WL 117984 (N.D. Ill. Sept. 26, 1989)*; Bankier v. First Fed'l Sav. & Loan Assoc.*, 225 Ill. App. 3d 864, 588 N.E.2d 391 (4th Dist. 1992)). In the cases cited by Canady, the plaintiffs alleged breach of contract but did *not* allege affirmative misrepresentations by the defendants inducing execution of the contracts. *See Randazzo,* 104 F. Supp. 2d at 951, 954; *Harris Trust & Sav. Bank*, 1989 WL 117984, at *1-3, 5; *see also Ehrhart v. Unum Life Ins. Co.*, No. 99 C 1340, 1999 WL 498597, at *2-3 (N.D. Ill. July 2, 1999) (concluding that plaintiff stated "garden-variety" contract case where he did not allege insurance company made false assurances to induce execution); *Bankier*, 225 Ill. App. 3d at 875 (finding that plaintiff's case involved only contract interpretation but not misrepresentations). In *Randazzo* and *Harris Trust & Savings Bank*, for example, the plaintiffs alleged that the actual prepayment penalty provisions of their respective loans were misleading and they sued when defendants demanded payment. *Randazzo*, 104 F. Supp. 2d at 951, 954; *Harris Trust & Sav. Bank*, 1989 WL 117984, at *1-3, 5. They did not claim that representatives of the defendant banks deceived them about the terms of the loans to convince them to execute the contracts. *Randazzo*, 104 F. Supp. 2d at 951, 954; *Harris Trust & Sav. Bank*, 1989 WL 117984, at *1-3, 5. The *Randazzo* and *Harris Trust & Savings Bank* plaintiffs alleged that defendants misrepresented the legal effect of the prepayment provisions after execution of the loan documents and in order to coerce payment of the penalties. *Randazzo*, 104 F. Supp. 2d at 951, 954 (alleged misrepresentation regarded interpretation of *existing* contract); *Harris Trust & Sav. Bank*, 1989 WL

---

²We caution Canady's counsel that when directly quoting authorities, word-for-word, he should use quotation marks. Simply citing a case is not sufficient notice to the reader that the phrasing is that of the court, rather than his own.

117984, at *1-3, 5 (same).

On the contrary, LeDonne does not allege that the terms of the insurance contract itself are misrepresentations. Nor does he claim that Canady misrepresented the legal effect of the insurance policy after execution. Rather, LeDonne alleges that Canady misrepresented the fact that AXA would pay disability benefits (or, by the same token, he concealed the fact that AXA would not pay benefits) if LeDonne was unable to operate his store due to a disability. This misrepresentation occurred prior to – and to induce – his purchase of the policy. The Amended Complaint thus alleges more than a simple breach of contract, and we cannot say that LeDonne could prove no set of facts in support of his *prima facie* IFCA claim. Accordingly, we deny Canady's motion as to Count V.

## CONCLUSION

For the above stated reasons, we grant Canady's motion as to Count III and dismiss the promissory fraud claim with prejudice as against all defendants. We also grant Canady's motion as to Count IV with prejudice but deny it as to Count V. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: 1/27/06