IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM C. LEDONNE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05 C 1151 |
| | ) | |
| v. | ) | |
| | ) | |
| AXA EQUITABLE LIFE INSURANCE CO., | ) | Judge Marvin E. Aspen |
| (f/k/a The Equitable Life Assurance | ) | |
| Society of the United States), a | ) | Magistrate Judge |
| New York Corporation, and | ) | Arlander Keys |
| WILLIAM CANADY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

William LeDonne owned and operated an Ace Hardware store on Central Avenue in Chicago. He purchased from William Canady, an agent for AXA Equitable Life Insurance Company, a Total Disability Insurance Policy, which was effective as of September 6, 1996. The policy provided benefits in the event that he became totally disabled - that is, if an injury or sickness left him "unable to perform the important duties of Your Occupation" (according to the policy, "the occupation in which you are regularly engaged at the time you become disabled").

After being injured in a motorcycle accident, on November 15, 2002, Mr. LeDonne made a claim to Equitable under the policy. Initially, Equitable approved the claim and paid Mr. LeDonne Total Disability benefits from December 14, 2002 (after satisfaction of the policy's 90-day elimination period) through

January 12, 2003. According to Equitable, by January 12, 2003, Mr. LeDonne was able to resume the important duties of his job, and it, therefore, declined to pay benefits after that date. Mr. LeDonne appealed Equitable's decision to stop paying benefits, and, on December 14, 2004, Equitable upheld its decision to terminate benefits as of January 12, 2003.

Mr. LeDonne then sued (originally in state court, but the action was removed to this court on the basis of diversity jurisdiction). His complaint, amended twice, alleges breach of contract and unreasonable/vexatious delay claims against Equitable, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act against both Equitable and Mr. Canady.

Equitable has moved for summary judgment, and that motion is currently pending before Judge Aspen, the district judge assigned to the case. In response to the motion for summary judgment, Mr. LeDonne offered the affidavit testimony of two witnesses he previously disclosed as experts, Elliot Leitner and James Boyd. Equitable moved to exclude this evidence, and the district judge referred the motion to this Court.

## Discussion

District courts have the power to exclude evidence in limine as part of their inherent authority to manage trials. *See Pease v. Production Workers of Chicago and Vicinity Local 707*, No. 02 C

6756, 2003 WL 22012678, at *3 (N.D.Ill. Aug. 25, 2003)(citing *Farley v. Miller Fluid Power Corp.*, No. 94 C 2273, 1997 WL 757863, at *1 (N.D.Ill. Nov. 24, 1997); *Luce v. United States*, 469 U.S. 38, 41 (1984)). Motions *in limine* should be granted only if the evidence is clearly not admissible for any purpose. *See Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D.Ill. 1993).

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and by the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 provides that an expert witness may testify regarding scientific, technical, or other specialized knowledge that will assist the trier of fact to understand evidence, if: 1) the testimony is based upon sufficient facts or data, 2) the testimony is based on reliable principles and methods, and 3) the expert properly applied those principles and methods to the facts of the case.

Under *Daubert* and *Kumho*, this Court is required to act as "gatekeeper," admitting only that expert testimony that passes a "flexible" test involving the consideration of a variety of factors intended to gauge the reliability and relevance of the evidence. For expert testimony to be admitted, the movant must establish that the expert testimony is both reliable and helpful in assisting the trier of fact in understanding the evidence or

3

determining a fact at issue in the case. *Bullock v. Sheahan*, No. 05 C 1051, 2007 WL 2461657, at *1 (N.D.Ill. Aug. 28, 2007). "The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *Spearman Idus. v. St. Paul Fire & Marine Ins.*, 128 F.Supp.2d 1148, 1150 (N.D.Ill. 2001)). The court must also keep in mind that the question of whether the expert is credible or whether the theories being applied by the expert are correct, is a "factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2005). Furthermore, "[i]t is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Id.*

Before turning to the substance of the expert testimony at issue, the Court considers Equitable's argument that the challenged affidavits were submitted too late. Equitable argues that, consistent with the parties' scheduling order, experts were to be disclosed by March 28, 2006; yet, Mr. LeDonne disclosed the opinions of Mr. Leitner and Mr. Boyd in response to summary

judgment, on January 23, 2009 - almost three years after the deadline had passed. Mr. LeDonne argues that his expert reports were timely disclosed and that the affidavits prepared in response to summary judgment do not disclose any new opinions. On this, the Court agrees with Mr. LeDonne.

To be sure, the challenged affidavits were not the first the Equitable heard of Mr. Leitner and Mr. Boyd. In fact, during discovery, Mr. LeDonne submitted to the defendants reports prepared by these experts, as well as their curricula vitae. According to the information submitted for Mr. Leitner, he is "an independent insurance consultant," "an expert with over 35 years in Disability, Life and Medical Insurance," who, for the past 15 years has worked as an "insurance litigation consultant." *See* Exhibit A to Equitable's Motion *in Limine*. In his report, Mr. Leitner opined, based upon the information he reviewed, that "AXA Equitable acted unreasonably when it terminated benefits due Mr. LeDonne." *Id*. He further opined that "adequate investigation and reasonable inquiry into the possibilities favorable to Mr. LeDonne's position would have resulted in the claim having been paid." *Id*. In his affidavit, Mr. Leitner states that Mr. LeDonne "met and meets the policy definition of total disability and defendant wrongly and improperly denied [his] claims for total disability benefits under the policy." His affidavit includes the opinions offered in his report, and also opines that

"defendant's evaluation and denial of plaintiff's claims for disability benefits under the policy was contrary to insurance industry standards and fair claim adjustment practices."

During discovery, Mr. LeDonne also submitted to the defendants a report prepared by James Boyd, Mr. LeDonne's "expert in the field of vocational rehabilitation." The report, which Mr. LeDonne sent to the defendants on June 8, 2004, is basically a vocational assessment; in it, Mr. Boyd opines that "Mr. LeDonne's functional restrictions preclude him from performing as both owner/manager of Ace Hardware as well as manager of any retail operation." See Exhibit B to Equitable's Motion in Limine. In his affidavit, submitted in response to Equitable's summary judgment motion, Mr. Boyd repeats this opinion. He also opines that Equitable "made false and misleading statements and inaccurate description of the 'important duties' of plaintiff's occupation to justify its denial of plaintiff's claim for total disability benefits under the policy" and that "plaintiff met and meets the policy definition of totally disabled at the time defendant denied his claims for total disability benefits under the policy." Id.

In short, a review of both the affidavits and the reports shows that there is nothing new in the affidavits; all of the opinions disclosed in the affidavits were either specifically recited or generally discussed in the reports disclosed during

expert discovery. The Court rejects Equitable's timeliness argument.

Equitable also argues that the affidavits of Messrs. Boyd and Leitner include opinions on ultimate issues in the case, and are therefore inadmissible. But Federal Rule of Evidence 704 provides that, "[e]xcept as provided in subdivision (b) [which deals with testimony about a criminal defendant's state of mind and is, therefore, not relevant here], testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Thus, even if the opinions do concern the ultimate issues to be decided in the case, that alone does not make them inadmissible or objectionable, and Equitable's challenge on this basis is rejected.[1]

Although not *per se* inadmissible, as explained above, the Court must nevertheless satisfy itself that the opinions Mr. LeDonne seeks to offer will be both helpful to the trier of fact

---

[1] To support its position on this issue, Equitable cites *Good Shepherd Manor Foundation v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003), which presupposes that "ultimate issue" opinions are *per se* precluded under Federal Rules of Evidence 702 and 704. But, as the Seventh Circuit noted in *United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996), the case upon which *Good Shepherd* relies, the question of whether such opinions are admissible remains open; the analysis basically collapses into that spelled out above – namely, whether the opinion evidence is helpful and reliable. *See also* Federal Rule of Evidence 704, comments ("[t]he abolition of the ultimate issue rule does not lower the bars so as to admit all opinions"; "opinions must be helpful to the trier of fact").

and reliable in the sense spelled out in Federal Rule of Evidence 702 and *Daubert*. Looking first to Mr. Leitner, the Court finds that this is not the case.

In the affidavit submitted in response to Equitable's summary judgment motion, Mr. Leitner states that he is "an expert in the field of disability claim analysis and adjustment"; that he has reviewed the "salient evidentiary materials"; and that, based upon his review of those materials, he opines that:

- plaintiff met and meets the policy definition of total disability and defendant wrongly and improperly denied plaintiff's claims for total disability benefits under the policy;

- defendant acted unreasonably when it denied plaintiff's claim for total disability benefits under the policy;

- defendant did not exercise reasonable diligence in investigating and evaluating plaintiff's claims for benefits under the policy;

- when defendant denied plaintiff's claims for disability benefits under the policy, it did not have sufficient documented basis for doing so;

- reasonable and fair investigation and evaluation of plaintiff's claims for disability benefits under the policy by defendant should/would have resulted in the claim having been paid;

- defendant's evaluation and denial of plaintiff's claims for disability benefits under the policy was contrary to insurance industry standards and fair claim adjustment practices.

This is essentially the sum total of the affidavit – it does not include any support for the opinions, nor does it include any substantive reasoning or analysis. The affidavit does state that

"the reasons for my opinions are contained in my report." Unfortunately, that is simply not true.

Mr. Leitner's report, like his affidavit, is extremely short on reasoning and analysis. His report says nothing about why, in his view, Mr. LeDonne met the definition of "total disability"; nor does it explain why, in his view, Equitable acted unreasonably when it denied Mr. LeDonne's claim; nor does it explain how he arrived at the conclusion that a reasonable and fair investigation of Mr. LeDonne's claim would have resulted in the claim being paid. With regard to the other three opinions (those concluding that Equitable failed to exercise reasonable diligence, that Equitable did not have a sufficient documented basis for denying the claim, and that Equitable's evaluation and denial was contrary to insurance industry standards), there is at least some explanation in the report, but it is not enough to satisfy the standards set forth above.

In his report, Mr. Leitner explained that, specific to Mr. LeDonne's case, he reviewed pleadings (the amended complaint and the answer), discovery responses, Equitable's underwriting file and Equitable's claim file. Based upon his review of these documents, he first opined that:

- AXA Equitable acted unreasonably when it terminated benefits due Mr. LeDonne. The reason provided in Beth Robinson's letter dated January 29, 2003 did not justify discontinuance of his claim. The letter also violated Section 919.50 of Illinois improper Claim Practices, when she failed to advise Mr. Ledonne of the

9

availability of the Department of Insurance."
Although there is a little bit more here than there is in the affidavit, Mr. Leitner does not explain how Equitable's justification was deficient, or why coverage should have continued. His opinion that Equitable acted unreasonably is simply not supported, and it is therefore inadmissible.

Mr. Leitner also opined in his report that "AXA Equitable did not exercise reasonable diligence in investigating and evaluating the claim." He then noted that "[a]t no time prior to Beth Robinson's letter of January 29, 2003, when she discontinued monthly benefits due Mr. LeDonne, did the Company's internal consulting physician contact Dr. Beigler to discuss Mr. LeDonne's treatment, restrictions, and his limitations. This is contrary to insurance industry standards." He also noted that, when coverage was discontinued, the claim file "did not contain [a] single document confirming that Mr. LeDonne was not totally disabled as defined in the policy contract," and that Equitable never conducted an independent medical examination to confirm Mr. LeDonne's disability status, which, he claims, was also contrary to insurance industry claim practices. And finally he noted that Beth Robinson's letter of October 13, 2005 to the Illinois Department of Insurance provided only half the story and "failed to provide full disclosure." Although he does not explain it, it is possible that Mr. Leitner offers all of this to support his

opinion concerning Equitable's handling of Mr. LeDonne's claim. Even so, it would not be enough to render his opinions reliable - or even meaningful. He has offered no explanation of what industry standards he's talking about, what they are, how Equitable fell short of compliance, etc. He seems to expect that the Court will accept his conclusory opinions simply because of his status as an expert, which is totally at odds with Rule 702 and *Daubert*.

Mr. Leitner also opined in his report that "adequate investigation and reasonable inquiry into the possibilities favorable to Mr. LeDonne's position would have resulted in the claim having been paid." As in his affidavit, this opinion is utterly without support or explanation. It is one thing to say that Equitable handled the claim inadequately, it is quite another to say that, if Equitable had handled it properly, it would have been paid. Criticizing Equitable's handling of the claim is not enough here; he would have to explain why the claim was valid and why, applying accepted practices, the claim satisfied the criteria for payment. Mr. Leitner's report and affidavit do not do so; instead, they assert mere conclusions and are, therefore, inadmissible. The Seventh Circuit has instructed that, although "[a]n expert is entitled to offer a view on the ultimate issue, . . . an expert's report that does nothing to substantiate this opinion is worthless, and therefore

inadmissible." *Minasian v. Standard Chartered Bank*, 109 F.3d 1212, 1216 (7th Cir. 1997). "An 'opinion has a significance proportioned to the sources that sustain it.' *Petrogradsky Mejdunarodny Kommerchesky Bank v. National City Bank*, 253 N.Y. 23, 25, 170 N.E. 479, 483 (1930) (Cardozo, J.). An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Id.* (quoting *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989). This is true of Mr. Leitner.

Turning to Mr. Boyd, Equitable first challenges his qualifications as an expert. In particular, Equitable argues that Mr. LeDonne "has failed to provide any evidence that Boyd has any medical knowledge or training that would qualify him to offer the medical opinions contained in his report." The Court agrees that Mr. Boyd likely would not qualify as a medical expert. But he's not really being offered as such; rather, he offers opinions concerning vocational matters, and, as his c.v. makes clear, he is qualified to do so.

The Court next considers whether Mr. Boyd's opinions would be helpful and whether they are reliable. In his affidavit, Mr. Boyd opines that:

- plaintiff's "functional restrictions preclude him from performing as both owner/manager of the Ace hardware as well as manager of any retail operation" and that the fact that plaintiff "remain(ed) physically present to maintain and protect his vested business interest cannot be considered a gainful occupation and has no

12

>           transferability in the competitive job market."
>
> -   defendant made false and misleading statements and
>     inaccurate description of the "important duties" of
>     plaintiff's occupation to justify its denial of
>     plaintiff's claim for total disability benefits under
>     the policy;
>
> -   plaintiff met and meets the policy definition of
>     totally disabled at the time defendant denied his
>     claims for total disability benefits under the policy.

As was the case with Mr. Leitner's affidavit, these opinions are totally unsupported, unexplained and unsubstantiated. They are merely bottom line conclusions and, as such, add nothing to the judicial process. Unlike Mr. Leitner's report, however, Mr. Boyd's report does contain significant analysis and explanation, which, when read together, make his opinions reliable.

In his report, Mr. Boyd explains that he reviewed Mr. LeDonne's medical records, Ace Hardware materials concerning job requirements, and correspondence between Mr. LeDonne and Equitable; he also conducted an on-site job analysis of the owner/manager position. Based upon all of this, Mr. Boyd identifies Mr. LeDonne's duties, examines Equitable's determinations concerning what his duties were and whether he was capable of performing them, and reaches his own conclusion concerning these same issues. The Court finds that Mr. Boyd's opinions would be helpful to the trier of fact; the issue of whether Mr. LeDonne was capable of performing the duties Equitable said he could, and whether Equitable even used the

right criteria for assessing the issue are relevant to his breach of contract claim. The Court also finds that Mr. Boyd's opinions are adequately supported and reliable. His testimony is admissible, and Equitable's motion to exclude it is denied.

## Conclusion

For the reasons explained above, Equitable's motion *in limine* to exclude the testimony of Elliot Leitner and James Boyd is granted in part and denied in part; the motion is granted as to Mr. Leitner, as explained above, but it is denied in its entirety as to James Boyd.

Dated: August 14, 2009

ENTER:

*/s/ Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge